MOLNAR v. GORDON.

1. AUTOMOBILES—TAXICABS—NEGLIGENCE—EVIDENCE—HEAD-ON COL-
LISION.

Whether or not defendant driver of northbound taxicab on 4-
lane highway was guilty of negligence was a question of fact
for the jury and properly submitted to it in passenger's action,
where evidence was in dispute as to which lane the head-on
collision between the taxicab and a codefendant's southbound
car took place in, speed of taxicab, ability to see oncoming car
which was overtaking 2 southbound cars travelling abreast in
southbound lanes, and whether taxicab driver was guilty of
negligence in failing to turn into right-hand northbound lane.

2. SAME—TAXICAB PASSENGER—HEAD-ON COLLISION—GREAT WEIGHT
OF EVIDENCE.

Verdict for plaintiff, a passenger for hire in defendants' taxicab,
against defendant driver and owners of northbound taxicab
and southbound motorist whose car collided head-on with
taxicab *held*, not against the great weight of the evidence.

3. DAMAGES—EXCESSIVE VERDICT—LOSS OF EARNINGS—FRACTURED
ARM—SCARS.

Verdict of $6,500 for beauty operator *held*, not excessive where
plaintiff had earned $60 a week before she suffered a fracture
of the upper right arm, repaired by surgery, was hospitalized
7 days, wore a cast for about 4 months, has a permanent 6-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur, Automobiles §§ 176, 286.
[1, 2] "Emergency rule" as applied to automobile or motorcycle
drivers.  6 ALR 680; 27 ALR 1197; 79 ALR 1277; 111 ALR
1019.
Right or duty to turn in violation of law of road to avoid
traveler or obstacle.  24 ALR 1304; 63 ALR 277; 113 ALR
1328.
[3] 15 Am Jur, Damages § 214 *et seq.*
[3] Excessiveness of damages in action by person injured for per-
sonal injuries not resulting in death.  46 ALR 1230; 102 ALR
1125; 16 ALR2d 3.

inch scar on the arm, a numbness in the fingers and a drop in the wrist due to injury to the nerve which may be permanent and was unable to return to work for about 5 months after the accident, and no claim is made that the verdict was obtained by appeal to sympathy or other improper means and was within the range of proofs.

Appeal from Genesee; Gadola (Paul V.), J. Submitted June 11, 1953. (Docket No. 38, Calendar No. 45,782.) Decided October 5, 1953.

Case by Emma Molnar against James W. Gordon, John J. Hempton, and others for damages suffered when taxicab in which she was riding was struck by defendant Gordon's automobile. Verdict and judgment for plaintiff. Defendants Hempton and others appeal. Affirmed.

*Gilbert Y. Rubenstein,* for plaintiff.

*Cline & George (Rene J. Ortlieb,* of counsel), for defendants and appellants.

BOYLES, J. This is a personal injury automobile collision case. Plaintiff was a passenger for hire in a taxicab owned by defendants Elmer and James Burnett which was being driven by their employee, defendant Hempton, when it collided with an automobile driven by defendant Gordon. Plaintiff, alleging joint, several and concurrent negligence, sued all of said parties and on trial by jury received a verdict and had judgment entered against all of them for $6,500. The owners and the driver of the taxicab company, hereinafter referred to as the taxicab company, appeal. Gordon does not appeal.

For reversal, appellants claim that they were not guilty of negligence which was a proximate cause of the accident, that the verdict was contrary to the

great weight of the evidence, and that the verdict was excessive.

The accident occurred in the city of Flint, about 9 o'clock p.m., on US–10, a 4-lane trunkline highway. The taxicab in which plaintiff was a passenger was proceeding north in one of the 2 northbound lanes. There was no other northbound traffic. Witnesses disagreed as to whether the taxicab traveled in the lane nearest the center line or the lane nearest the shoulder. There was also a difference of testimony as to the rate of speed of the taxicab—defendants claiming approximately 30–35 miles per hour (within the limit of the posted speed zone), while plaintiff's proofs were that the taxicab was traveling 45–50 miles per hour. Three cars appeared in front of the taxicab, traveling toward it from the north, going south. The one closest to the taxicab was a Chevrolet, next was an Oldsmobile driven by one Varga, and as Varga was about to pass the Chevrolet in the southbound lane next to the center line he saw in his rear-view mirror another automobile rapidly approaching him from the rear, also southbound. It was defendant Gordon's car, swinging over across the center line to pass both the Chevrolet and Varga's Oldsmobile. With these 3 cars almost abreast, as Gordon was about to pass the other 2 cars he saw headlights approaching toward him in the northbound lane. He could not pull over into the other southbound lanes, where the Chevrolet and Oldsmobile were. There was a collision between Gordon's car and the taxicab. As to just where, or in which northbound lane of traffic it occurred, there was a dispute in the testimony. If it occurred in the lane nearest the shoulder, with the taxicab traveling at 30–35 miles per hour as its driver testified, he might have a chance to escape the collision. There was contradictory testimony as to whether the distance he could see the headlights of the 3 cars ap-

proaching him was 200 to 300 feet, or 1,000 to 1,200 feet—directly bearing upon his claim of sudden emergency. Consequently, where he was driving, how fast he was going, and how far he could see the 3 approaching cars—particularly Gordon's—in order to be able to avoid a collision, were very essential elements of dispute controlling decision. It is obvious that Gordon was guilty of negligence. How about the taxicab driver?

No question is raised as to the admission of testimony, or the court's charge to the jury. The contradictory testimony of the witnesses, who differed as to where the collision occurred, how fast the automobiles were traveling, how far they could be seen, and whether the taxicab driver was guilty of negligence under the circumstances if he did not turn toward the shoulder, was submitted to the jury. Appellants claim that was error.

The crucial questions on which witnesses differed were whether the taxicab driver was going north in the lane next to the center line or next the shoulder; whether he continued approximately in the same lane until the accident; whether he had ample opportunity to see Gordon approaching him in his taxicab lane at a high rate of speed in time to turn into the lane next the shoulder; and whether he did so. Whether he saw, or should have seen, Gordon approaching in his lane of traffic but continued on until the collision, was disputed. There was testimony that he saw the Gordon car 200 to 300 feet distant, other testimony that he could have seen it 1,000 to 1,200 feet away and did not attempt to turn out until the instant of the impact. Whether he was guilty of negligence was properly submitted to the jury.

In *Lijewski* v. *Wrzesinski*, 328 Mich 129, somewhat similar, where the defendant saw the other car a city block distant, approaching astride the

center, but did not turn out, the Court said that the defendant "was under obligation to use such means as was fairly within his power to avoid the collision. Such means surely included turning out a distance to his right sufficient so that his car could safely pass a car which was 3 feet over the median line, when he was only traveling 30 miles an hour."

The jurors saw and heard the witnesses. Decision hinged upon their credibility, which was for the jury. Whether this Court would have agreed upon the conclusion reached by the jury is beside the question. It was not error to submit the controverted issues of fact to the jury, and their verdict is not against the great weight of the evidence.

Appellants claim that the verdict for $6,500 was excessive. Plaintiff had a fracture of the upper right arm, repaired by surgery, was hospitalized 7 days, wore a cast continuously from late in December to the next April, now has a permanent 6-inch scar on the arm, also a numbness in the fingers and a drop in the wrist due to injury to the nerve, which may be permanent according to medical testimony 2 years later. Plaintiff had been a beauty operator before the injury, at one time earned an average of $60 weekly, was unable to return to work for about 5 months after the accident. No claim is made that the verdict was obtained by appeal to sympathy or other improper means, and it is within the range of the proofs. It is not excessive.

Affirmed.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.