## TUINSTRA *v.* LYNEMA.

1. AUTOMOBILES—FAILURE TO TURN ONTO RIGHT BERM—NEGLIGENCE
   —QUESTION OF FACT.
   
   The failure of a motorist, traveling in his proper lane on a 2-lane highway, to turn onto right berm when it is safe to do so and it reasonably appears necessary in order to avoid a head-on collision with an oncoming motorist who is in the same lane, gives rise to a question of fact as to negligence in such failure.

2. SAME—HEAD-ON COLLISION—PASSENGER IN OVERTAKING CAR.
   
   Verdict for plaintiff, a passenger in brother-in-law's car, then overtaking one defendant's car, on a 2-lane pavement when it collided with appellants' oncoming car *held,* not against the great weight of the evidence, where a question of fact was raised as to whether or not the driver of the oncoming car was negligent in failing to drive onto his right berm so as to avoid a collision.

3. JUDGMENT—FRAUD—AUTOMOBILES—INSURANCE.
   
   No fraud was committed upon the trial court nor on the judicial process, where the fact that plaintiff, a passenger in defendant brother-in-law's car had promised such defendant that liability against latter for injuries suffered in head-on collision with a second defendant's car while attempting to overtake a third defendant's car would not be enforced beyond the limit of defendant brother-in-law's insurance was all fully presented to the jury; such facts not precluding plaintiff from obtaining any judgment.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  5 Am Jur, Automobiles § 286.
[3–6]  5 Am Jur, Automobiles § 743; 30 Am Jur, Judgments § 202.
[7]  15 Am Jur, Damages §§ 210, 218, 226.
[8]  5 Am Jur, Automobiles §§ 733, 738.
[9]  5 Am Jur, Automobiles § 616.
[10]  5 Am Jur, Automobiles §§ 243, 657.

4. AUTOMOBILES—OVERTAKING MOTORIST—WILFUL AND WANTON MIS-
CONDUCT—CONFUSION OF JURY.

Contention that jury was confused when it found defendant
brother-in-law, in whose car plaintiff was a passenger, guilty
of wilful and wanton misconduct in attempting to overtake
another defendant motorist on a 2-lane pavement in face of
oncoming traffic and absolving other motorist *held*, without
merit (PA 1949, No 300, § 401).

5. SAME—ONCOMING MOTORIST—CONTRIBUTORY NEGLIGENCE.

Fact that jury in action against operator and owner of oncoming
car, overtaken car and driver of overtaking car found driver
of oncoming car guilty of contributory negligence *held*, not
fatal error vitiating verdict supported by the evidence.

6. SAME—PREJUDICE.

Verdict against overtaking motorist in whose car plaintiff was
a passenger and the owner and operator of oncoming car
with which collision occurred while first car was attempting
to overtake and pass another car *held*, not to have resulted
from prejudice as claimed.

7. DAMAGES—LEG INJURY—DOCTOR BILLS—LOSS OF WAGES.

Verdict for plaintiff of $30,799.78 against defendant brother-
in-law, driver of car in which he was riding, and defendant
owner and operator of oncoming car with which there was a
head-on collision *held*, not excessive, as having been secured
by improper means, prejudice or sympathy, where plaintiff
had doctor and hospital bills of $1,098.58, loss of wages total-
ling $4,537.60, permanent leg injury, unconsciousness at first
and later *petit mal* seizures, hospitalization for 1 month, in
bed for 3 months, inability to walk without crutches or canes
for 10 months and inability to do the work he had formerly
performed although able to work at easier work part of the
time. .

8. AUTOMOBILES—INSTRUCTIONS—PROXIMATE CAUSE.

Charge to jury in action arising from head-on collision between
cars as car in which plaintiff was a passenger collided with
oncoming car while attempting to overtake another car *held*,
not to have overemphasized plaintiff's case nor to have amount-
ed to a directed verdict as to him but to have fairly covered
the subject matter of defendants' requests to charge, especially
on the subject of proximate cause so far as oncoming motorist
was concerned.

9. Same—Admission of Evidence—Prejudice.

Rulings on admissibility of proffered evidence in passenger's action against host, overtaken motorist and oncoming motorist *held*, not to have resulted in prejudicial error.

10. Same—Guest Passenger—Wilful and Wanton Misconduct.

Verdict for plaintiff passenger against host motorist who collided with an oncoming car while attempting to overtake another car but alongside of which he had proceeded for about 1/2 mile at speed of 50 to 60 miles an hour while waiting for overtaken car to increase or decrease speed, although while such half mile was being traversed the host could have returned to his right-hand side of the pavement as plaintiff had urged *held*, not against the great weight of the evidence, it being an issue of fact, under all the evidence, as to whether host was guilty of wilful and wanton misconduct (PA 1949, No 300, § 401).

Appeal from Allegan; Smith (Raymond L.), J. Submitted June 17, 1954. (Docket No. 47, Calendar No. 46,177.) Decided October 4, 1954.

Case by Henry Tuinstra against Cornelius Lynema, Edson R. Soop, Standard Oil Company, a foreign corporation, and Russell Campbell, for damages resulting from automobile collision. Judgment of no cause for action as to defendant Campbell. Judgment for plaintiff against defendants Lynema, Soop and Standard Oil Company. Defendants appeal. Affirmed.

*Dwight M. Cheever* and *Leo W. Hoffman,* for plaintiff.

*Lokker, Den Herder & Boter,* for defendant Lynema.

*Varnum, Riddering, Wierengo & Christenson,* for defendants Soop and Standard Oil Company.

Dethmers, J.   Plaintiff sued to recover for damages resulting from personal injuries sustained as a guest passenger in an automobile driven by his brother-in-law, defendant Lynema, when the latter undertook to pass the automobile of defendant Campbell and collided head on with one driven by defendant Soop and owned by defendant Standard Oil Company.   Defendants' motions for directed verdict, judgment *non obstante veredicto,* and new trial were denied, the jury returning a verdict for plaintiff of $30,799.78 against defendants Lynema, Soop and Standard Oil Company, who appealed from judgment thereon, and for defendant Campbell of no cause for action with respect to which plaintiff does not appeal.

We consider first the appeal of defendants Soop and Standard Oil Company, starting with their asserted right to judgment *non obstante veredicto.* For that purpose the testimony, viewed in the light most favorable to plaintiff, discloses the following: That Lynema was driving in a southerly direction and, at a point a mile back from the scene of the accident, got over onto the left side of the pavement to pass an automobile, never returning to the right side again; that thereafter he undertook to pass Campbell's automobile, which accelerated, but he nonetheless drove up along side it and the 2 automobiles then proceeded abreast of each other at a speed of from 50 to 55 or 60 miles per hour for a distance of 1/2 mile; that while they were proceeding thus defendant Soop's automobile, approaching them from the south, hove into sight from behind foliage around a slight curve 1,000 feet distant; that plaintiff then told Lynema to "pull in," but that he failed to do so although plaintiff thought that he could have done so at that time; that there were other automobiles ahead of Campbell also proceeding south but at a slower rate of speed than he; that Lynema admitted seeing

the Soop automobile first when it was 600 or 700 feet
distant, considered getting ahead of the Campbell
car and onto his right side of the pavement, decided
he could not do so because the car ahead of Camp-
bell was too close, then considered getting in behind
Campbell but believed he could not do so because at
the moment the latter, as well as Lynema, had begun
to slow down, and then, when 250 to 300 feet sepa-
rated him from Soop's oncoming car, he began to
turn left onto the east shoulder; that the shoulder
was 6 feet wide, hard and firmly constructed of
gravel; that as Soop approached and saw or should
have seen Lynema coming on the east lane of the
pavement, he did not pull off onto the shoulder to
permit Lynema to get through, but, as he testified,
merely applied his brakes and pulled over to the east
edge of the pavement; that after Lynema drove onto
the shoulder Soop also drove partially onto the shoul-
der and a collision occurred between their automo-
biles on the east edge of the pavement.

In the face of such facts should Soop be held to
have been free from negligence, as a matter of law?
Did plaintiff fail to sustain the burden of proving
Soop guilty of any negligence which was a proximate
cause of plaintiff's injuries, or, on the contrary, did
Soop's failure to drive onto the shoulder while Lyne-
ma was approaching him on the pavement, or his
partial turning onto the shoulder thereafter, and his
whole course of conduct, in the light of what was
plainly there to be seen by him, present a question of
fact for the jury as to whether he had been guilty of
such negligence? The meaning of *Lijewski* v. *Wrzes-
inski,* 328 Mich 129; *Molnar* v. *Gordon,* 337 Mich 615;
and *Bramer* v. *Ames,* 338 Mich 226, is definitely that
when a motorist, driving on his own right side of the
pavement, meets another wrongfully approaching
him in that same lane, the former must "use such
means as was fairly within his power to avoid the

collision," including turning out to the right if he
can safely do so and it reasonably appears necessary
in order to avoid an accident; and that failure so to
do gives rise to a question of fact as to his negli-
gence. While Soop had a right to rely on the as-
sumption that Lynema would observe the law and
get back on his own side, nevertheless, if, in due
course, it appeared or should have become apparent
to a reasonable person in Soop's position that Lyne-
ma could not or was not going to do so and if, at
that time, Soop still could have acted in safety to
avert the collision a duty arose on his part to act ac-
cordingly. Whether that was or was not the situa-
tion and, consequently, whether he was guilty of neg-
ligence, was a question of fact for the jury.

Defendants Soop and Standard Oil Company also
contend that the verdict was against the great weight
of the evidence. In this connection they point to
testimony of defendants' witnesses that the colli-
sion occurred almost immediately after Lynema
pulled out to pass Campbell, when Soop's car was
only 300 feet distant, and also to testimony that
foliage at the curve which Soop was approaching
just before the scene of the accident interfered with
vision to the extent that the Lynema car became vis-
ible to Soop not when it was 1,000 feet distant, as
plaintiff testified, but when only 600 feet distant; and
that when Lynema's automobile first became visible
to Soop the Campbell automobile had not yet begun
to slow down and consequently it was still possible
at that moment for Lynema to have gotten back into
his own right lane. What the facts were in that
respect and, regardless of whether the distance sep-
arating them was 1,000 feet or 600 feet, the question
of whether to a reasonable and prudent man in
Soop's position it would have appeared that Lynema
could not get back, and that therefore it was neces-
sary for Soop to drive onto the shoulder and wheth-

er he could or should have succeeded in getting off
the pavement altogether, as Lynema ultimately did,
in time to avoid a collision, were all questions of
fact under the evidence in the case. It cannot be
said that the great weight of the evidence was con-
trary to the jury's resolving of those questions as
reflected in their verdict.

Defendants urge that the judgment should be va-
cated because obtained through collusion and fraud
in that Lynema admitted in testimony before the
jury that he had consulted with plaintiff's attorney,
examined plaintiff's declaration with plaintiff, and
been assured by plaintiff that, if judgment entered
against Lynema, plaintiff would not enforce it be-
yond the amount of Lynema's insurance. Not in
point is the cited case of *Wright* v. *Hake,* 38 Mich
525, in which it was held that sureties on a replevin
bond were not bound by a judgment on the bond ob-
tained without their knowledge by the fraud, col-
lusion and stipulation, entered into between the prin-
cipal and obligee. The fact that plaintiff and
Lynema are brothers-in-law and that plaintiff made
the mentioned promise could not serve, thereafter,
to preclude plaintiff from obtaining any judgment.
Those facts were pertinent as to the credibility of
Lynema as a witness, and as such they were fully
presented to the jury to aid them in determining
what credence they would give his testimony. Con-
sequently no fraud was perpetrated on the court nor
on judicial process in that connection.

We find no merit in Soop's contention that the
verdict should be set aside because of confusion in
the minds of the jurors as indicated by their hold-
ing Lynema guilty of wilful and wanton misconduct
and at the same time absolving Campbell from
blame. The positions of the two in the case were
not so identical as to require like results. The fur-
ther fact that the jury announced that they had found

Soop guilty of contributory negligence rather than negligence did not constitute fatal error vitiating a verdict supported by the evidence. The record does not disclose, as claimed, that the verdict resulted from prejudice.

Plaintiff suffered a fractured right femur and broken kneecap, resulting in a crooked femur and shortening of that leg by 1 inch as well as permanent limitation of motion of the right thigh and knee; he was unconscious at first and thereafter suffered from *petit mal* seizures; he was hospitalized for 1 month, in bed for 3 months, and unable to walk without crutches or canes for 10 months; his physician testified to permanent impairment of ability to do certain types of work; plaintiff testified that at the time of trial he could not do the work that he had formerly performed, and was able to work at an easier job only about half time; he also complained of memory blocks. Plaintiff offered proofs of actual monetary loss during the 16 months from date of injury to trial of $5,636.18, consisting of doctor and hospital bills of $1,098.58 and loss of wages totalling $4,537.60. The testimony shows that he endured much pain and suffering. At the time of trial he had a life expectancy of 30 years. Was the verdict excessive? A similar claim of excessive verdict was considered and discussed in *Samuelson* v. *Olson Transportation Co.,* 324 Mich 278, which is much in point here. We cannot say that the verdict was secured by improper means, prejudice or sympathy, or that it so shocks the conscience as to require substituting our judgment for that of the jury and hence setting the verdict aside.

A reading of the entire charge leaves us unable to agree that the court overemphasized the plaintiff's case to the jury or that the charge was tantamount to a directed verdict for plaintiff. It fairly covered the subject matter of defendants' requests

to charge, including the right of defendant Soop to rely on the assumption that Lynema would observe the law and return to his right side of the pavement until it appeared or should have become apparent to a reasonable man that he would not or could not do so. It properly defined the nature of the duties resting on Soop. We find that no prejudicial error resulted from the court's rulings on admissibility of proffered evidence.

In addition to the foregoing, defendant Lynema raises the further question of whether the evidence was sufficient to go to the jury touching his wilful and wanton misconduct of which he was found to be guilty.* In addition to the facts concerning his conduct, as above noted, with respect to his state of mind immediately preceding the accident, he testified significantly as follows: That as he drove his automobile for more than a half mile abreast of the Campbell automobile, before seeing Soop's approaching automobile coming from behind the foliage at the curve, he and Campbell maintained a constant speed of from 50 to 55 or 60 miles per hour; that he had planned to pass 2 other automobiles ahead of Campbell; that during that time he could have increased his speed and passed Campbell or decreased it and, in either case, have turned over onto his right side of the pavement, as plaintiff testified that he finally had urged him to do; that he did not know why he had not done so, and then, that he had failed to do so because he was leaving it up to Campbell to either speed up or slow down, and that he had maintained a steady, uniform rate of speed, waiting for Campbell to increase or decrease his speed so as to let Lynema get back on the right side of the pavement. Under all the testimony in the case should Lynema have been held to have been,

---

* See PA 1949, No 300, § 401 (Stat Ann 1952 Rev § 9.2101).—Reporter.

as a matter of law, not guilty of wilful and wanton misconduct, leaving no question in that regard for the jury? That, we think, would have run contrary to our holdings in *Kocks* v. *Collins,* 330 Mich 423; *Price* v. *Western,* 330 Mich 680; and *Cain* v. *Enyon,* 331 Mich 81. Defendant relies on earlier decisions. Not to be overlooked is the significance of the statement in *Price,* quoted with approval in *Cain,* that:

"To the extent that previous decisions of the Court seem to hold to the contrary we now decline to follow the same."

The holding in those 3 cases, reluctantly concurred in by the writer, undoubtedly represented a change from the view to which this Court earlier had adhered, and leads to the conclusion here that a jury question was presented. The verdict was not against the great weight of the evidence.

Affirmed, with costs to plaintiff.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.