CAIN *v.* ENYON.

1. WITNESSES—HUSBAND AND WIFE—PRIVILEGED COMMUNICATIONS —CONSENT—TERMINATION OF MARRIAGE RELATION.
   The statute barring a husband or wife from testifying for or against the spouse without the latter's consent does not bar one spouse, after termination of the marital relation, from testifying against the other, or the estate of the other, without consent thereto except as to testimony as to any communication made by one to the other during the marriage, the prohibition as to such excepted matters not being removed by the termination of the marriage relation (CL 1948, § 617.67).

2. SAME—COMPETENCY OF WIFE IN ACTION AGAINST HUSBAND'S ESTATE.
   A wife is a competent witness in an action against the estate of her deceased husband as to matters not involving privileged communications between herself and her husband, hence, the exclusion of such matters as to which she was competent to testify was error (CL 1948, § 617.67).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Witnesses §§ 175, 186.
[3] 5 Am Jur, Automobiles § 683.
[3] What amounts to gross negligence, recklessness, or the like, within statute limiting liability of owner or operator of automobile for injury to guest. 74 ALR 1198; 86 ALR 1145; 96 ALR 1479.

3. AUTOMOBILES—GUEST PASSENGERS—WILFUL AND WANTON MIS-
    CONDUCT—EVIDENCE—QUESTION FOR JURY.

> Directed verdict for estate of deceased motorist was error in
> action by estate of guest passenger in view of testimony pre-
> sented which indicated decedent driver was driving at a high
> rate of speed and that while he repeatedly reduced speed at
> requests of passengers, he would shortly thereafter increase his
> speed and finally lost control of his car at a curve on a tarvia
> road after traveling about 1½ miles at an increased high rate
> of speed, the question of whether he was guilty of wilful and
> wanton misconduct or gross negligence being for the jury
> (CL 1948, § 256.29).

Appeal from Kent; Souter (Dale), J. Submitted
June 12, 1951. (Docket No. 53, Calendar No. 45,166.)
Decided September 5, 1951.

Case by Norma Cain, administratrix of the estate
of Lucille Giesey, deceased, against Dorothy Enyon,
administratrix of the estate of Roland B. Anderson,
deceased, for damages resulting from death of her
decedent in automobile accident. Directed verdict
and judgment for defendant. Plaintiff appeals. Re-
versed and remanded for new trial.

*John M. Dunham,* for plaintiff.

*Lindsey, Shivel, Phelps & Vander Wal,* for de-
fendant.

CARR, J. The declaration filed in circuit court by
the plaintiff in this case alleged the right to recover
damages on the ground of wilful and wanton mis-
conduct. During the evening of October 17, 1949,
Roland B. Anderson and his wife, Elaine, residents
of the village of Sparta, went for a ride in an auto-
mobile owned and driven by the husband. They
took with them as invited guests a man named Ken-
neth Streeter and plaintiff's decedent, Lucille Gies-
ey, a young lady 22 years of age. They were re-

turning to Sparta some time after midnight when the car left the highway and, after proceeding through various obstacles, struck a culvert. Mr. Anderson and Miss Giesey sustained fatal injuries.

On the trial of the case in circuit court it was the claim of the plaintiff that Mr. Anderson operated his automobile at such a rate of speed and in such manner as to justify the conclusion that he was guilty of gross negligence or wilful and wanton misconduct resulting in liability under the provisions of the guest passenger act.* At the conclusion of plaintiff's proofs defendant moved for a directed verdict. The trial court came to the conclusion that the testimony received was insufficient to establish a prima facie case, and that plaintiff was not entitled to have the issue submitted to the jury. The motion was granted, and judgment entered on the directed verdict. Plaintiff has appealed.

The first question presented involves the admissibility of the testimony of Mrs. Anderson who was called as a witness by plaintiff. Counsel for defendant interposed a general objection, apparently on the ground that Mrs. Anderson ought not to be permitted to testify against the estate of her deceased husband. After certain preliminary questions were asked and answered, specific objection was made to the witness testifying to a conversation between herself and her husband prior to their starting on the automobile ride. Thereupon the jury was excused and the examination continued for the purposes of the record. The witness testified that she and her husband had been having some marital difficulties, that they were separated at the time, and that the husband had instituted a suit for divorce. She then testified to the substance of a conversation between

* See PA 1949, No 300, § 401 (CL 1948, § 257.401 [Stat Ann 1949 Cum Supp § 9.2101]), which re-enacted CL 1948, § 256.29 (Stat Ann § 9.1446).

them, the gist of which was that Mr. Anderson sought a reconciliation and that she refused. She also testified as to her husband driving at a high rate of speed over gravel roads, that she requested him several times to decrease his speed, that each time he did so temporarily, later increasing it, and that some beer was purchased and consumed on the trip but without intoxication on the part of any of the occupants of the car resulting therefrom. She also stated that Mr. Anderson displayed irritation because of her rejection of his plea for a reconciliation. Apparently this matter was brought out in support of plaintiff's claim that Mr. Anderson's state of mind was unhappy and that his manner of driving was, in part at least, prompted thereby. Following the completion of the testimony of Mrs. Anderson the trial judge concluded that her testimony was not competent, and accordingly he excluded it. Appellant claims that the refusal to allow the jury to consider such testimony was erroneous.

The pertinent statutory provisions on which the ruling of the trial court was based are set forth in CL 1948, § 617.67 (Stat Ann 1949 Cum Supp § 27.-916). Said section reads in part as follows:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, * * * nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage."

To the inhibition contained in the first part of the section certain exceptions not material in the instant case are made. In the enactment of the statute the legislature did not see fit to extend the bar in such manner as to prevent one spouse, after the termination of the marital relation, from testifying against

the other, or the estate of the other, without consent thereto. In the instant case the statute may not be construed as barring the testimony of Mrs. Anderson except as to matters covered in the last provision above quoted. Termination of the marital relation, by death or divorce, does not open the door to one spouse testifying against the other, or against the estate of the other, as to privileged communications between the spouses during the continuance of the relation.

The interpretation of the statute has been considered by this Court in several cases. In *People* v. *Bowen*, 165 Mich 231, the defendant was prosecuted for the murder of his wife. As a witness in his own behalf he undertook to testify to a conversation that he claimed to have had with his wife. In holding that the statute barred the testimony, it was said:

"According to the claim of the defense, they were having a last talk before a final separation, and doubtless they were discussing a matter of extreme delicacy and vital importance, closely related to their marital relation, and in our opinion the most liberal construction of the statute would not justify a suspicion even that the communications were not intended to be in marital confidence. 23 Am & Eng Enc Law (2d ed), p 99. They were then privileged, and under the explicit words of the statute the husband could not testify to them without the consent of his wife, which, being dead, she could not give. The privilege secured by this statute survives separation, divorce, and death. 4 Wigmore on Evidence, § 2341; 23 Am & Eng Enc Law (2d ed), p 98."

In *Hendrickson* v. *Harry*, 200 Mich 41, the plaintiff sought to recover damages for alienation of his wife's affections. At the time of the trial the parties were divorced. The defendant sought to introduce in his behalf the testimony of plaintiff's former wife. After quoting the statute, it was said:

"According to the letter of the law the witness Hilma Hendrickson was a competent witness for the defendant except that she could not testify to communications made by herself to her husband and by him to her during their marriage, this action being treated by counsel for both parties as not being one instituted in consequence of adultery. It is said for plaintiff, appellee, that if she is permitted to answer as to her feeling towards and affection for him, the real reason for her state of mind at the time must be developed by cross-examination, which it is obvious cannot be conducted without inquiry into the domestic relations; that

"'Had she been permitted to testify that at said time she had lost her affection for her husband, the question would at once arise as to why she had lost her affection for him. Had she been permitted to testify that she lost her affection for her husband on account of his acts of physical violence against her, the cause of such acts of physical violence would necessarily have to be inquired into. In any event, it would be impossible to cross-examine the witness so as to show the real reason for her loss of affection for the plaintiff, without going into their marriage relation.'

"It must be held that the divorced wife was a competent witness, generally, for the defendant—and for that matter for the plaintiff—and it appearing that no objection was made that the offer to prove was too broad, no suggestion made that it should be more specific, it is held that the court should have permitted the examination to proceed until testimony was called for which she was not competent to give. What questions may be asked her cannot be anticipated, nor can this Court upon this record lay down any rules for the trial court beyond the one above stated. The witness will be subject to cross-examination like any other witness, and her credibility and the weight of her testimony will be for the jury."

*In re Doty's Estate,* 212 Mich 346, involved the validity of a will which the daughter of the testator contested. In an attempt to etablish that testator was subject to insane delusions, his widow was called as a witness, testifying as to conversations and actions on his part tending to belittle and discredit him. Knowledge with reference to such matters came to her because of the marital relation. It was held that the widow could not testify competently to such matters. In *Patterson* v. *Hill,* 212 Mich 635, an action for alienation of the wife's affections, tried after the granting of a decree of divorce, it was held that the trial court was in error in wholly excluding the testimony of the divorced wife called as a witness in defendant's behalf. It was there said:

"We are of the opinion that when the marriage relation has been terminated, the statute prohibits the testimony of either spouse against the other only to the extent of privileged communications. That Mrs. Patterson was a competent witness in many matters pertinent to the issue is very evident. It seems unreasonable to hold that she might not testify as to many matters, including her conduct and relationship with the defendant; and as was said by Chief Justice OSTRANDER (*Hendrickson* v. *Harry, supra*):

" 'What questions may be asked her cannot be anticipated, nor can this Court upon this record lay down any rules for the trial court beyond the one above stated.' "

See, also, *People* v. *Gessinger,* 238 Mich 625; *People* v. *Zabijak,* 285 Mich 164; *People* v. *Ignofo,* 315 Mich 626. In the instant case Mrs. Anderson was a competent witness as to matters not involving privileged communications between herself and her husband. Her testimony as to their conversations relating to their marital affairs was open to objec-

tion. She was not a competent witness with reference to Mr. Anderson's attempt to effect a reconciliation, nor generally as to matters concerning which she had knowledge because of the existence of the relation of husband and wife between the parties. This applies particularly to statements by her indicating that Mr. Anderson was angered by her refusal to agree to a reconciliation. Plaintiff was entitled to have her testimony as to matters concerning which she could competently testify submitted to the jury, and the exclusion thereof was erroneous.

In determining whether the verdict for defendant was properly directed, consideration must be given to such portions of Mrs. Anderson's testimony as were competent and also the testimony of other witnesses in plaintiff's behalf. Two deputy sheriffs of Kent county who investigated the accident the following morning told the jury of the situation existing at the place where the accident occurred. The car left the road at a curve and the results of its impact with obstacles in its path suggests that it was traveling at a high rate of speed. It is a matter of inference from plaintiff's proofs that Mr. Anderson lost control of the car which went off the highway on the left side. Kenneth Streeter, plaintiff's principal witness, told in some detail of the trip taken by the young people and particularly with reference to the speed at which the automobile was driven. He heard Mrs. Anderson protest to her husband with reference to the latter driving so fast. He also testified to hearing certain profanity used. On one occasion he protested to the driver with reference to the speed, and thereupon Mr. Anderson slowed down but shortly thereafter speeded up again. At one time he heard the driver remark that he was going 75 miles per hour. He further stated that after the parties left the gravel road and start-

ed on a so-called "black top" highway toward the village of Sparta the speed increased. The accident happened after the car had proceeded approximately 1½ miles on the tarvia road. On behalf of plaintiff it is claimed the conduct of Mr. Anderson in the operation of his car indicated a spirit of recklessness and wantonness, that he proceeded in the face of danger, of which he knew or should have known, at such a rate of speed that he could not control his automobile, and that he did so with a total disregard of consequences as affecting the safety of his passengers. On behalf of defendant it is contended that Mr. Anderson's conduct was not, under prior decisions of this Court, of such character as to justify the conclusion that he was guilty of wilful and wanton misconduct or gross negligence within the scope of the guest act.

The trial of the instant case began in circuit court on January 15, 1951. Since that time this Court has decided 2 cases somewhat analogous on their facts to the case at bar. In *Kocks v. Collins,* 330 Mich 423 (decided May 14, 1951), testimony was introduced tending to establish that the defendant had operated his car on a city street at a speed in excess of 70 miles per hour, that he disregarded the objections and warnings of his guest passengers, and at one time increased his speed in response to a warning rather than decreasing it. The trial judge submitted the case to the jury which found that defendant was guilty of wilful and wanton misconduct and returned a verdict for the plaintiff. This Court affirmed the judgment entered, holding that a jury question was presented. The defendant lost control of his car while endeavoring to pass another vehicle. In reaching the conclusion indicated the Court pointed out that the defendant was bound to observe the physical conditions existing on and along the highway on which he was proceeding. A somewhat

similar situation was presented in *Price* v. *Western*, 330 Mich 680 (decided June 4, 1951). There defendant drove at a high rate of speed and when his guest passenger remonstrated he failed to slow up. Because of such rate of speed the defendant lost control of his car at a curve, in consequence of which plaintiff sustained serious injuries. It was held that the trial court properly submitted the case to the jury. *Kocks* v. *Collins, supra,* was cited, and the further statement made that:

"To the extent that previous decisions of the Court seem to hold to the contrary we now decline to follow the same."

See, also, *Titus* v. *Lonergan,* 322 Mich 112; *Davis* v. *Hollowell,* 326 Mich 673 (15 ALR2d 1160); *Cramer* v. *Dye,* 328 Mich 370.

In the instant case defendant places some emphasis on the testimony indicating that Mr. Anderson decreased his speed each time when requested to do so by his wife and by Mr. Streeter. Such fact does not, however, render the situation here materially different from that involved in either of the recent cases above cited. It may be argued that Mr. Anderson decreased his speed in recognition of the fact that he actually was traveling at a dangerous rate and that he then increased it in the realization of such fact but with a deliberate intention to drive at such excessive speed irrespective of the danger or the wishes of his passengers. Regardless of the reaction of the driver of the car in a case of this nature warnings given to him by other occupants of the vehicle are of significance because they have the effect of directing the attention of the driver to his speed and the attendant dangers therefrom. His persistence in such conduct, as in the case at bar, after the matter has been called to his attention, is indicative of deliberate purpose on his part.

Whether Mr. Anderson was guilty of wilful and wanton misconduct or gross negligence was a question, under plaintiff's proofs, for the jury to determine.

The judgment is reversed and the case is remanded to the trial court with directions to set aside the judgment in defendant's favor and to grant a new trial. Plaintiff may have costs.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.